**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**ALACHUA RETAIL 51, L.L.C.**

      Plaintiff,

vs.                                                            Case No. 1:11-CV-00187-SPM-GRJ

**THE CITY OF ALACHUA**, A Florida
Municipal Corporation,

      Defendant.

_____/

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

### A. BACKGROUND

Alachua Retail 51, L.L.C., (Plaintiff) is an adult bookstore that sells non-obscene

adult books, DVDs, magazines, and other adult materials to adult customers.  (Doc. 38 ¶ 2)

In 2010 Plaintiff leased a retail building located at 15947 N.W. U.S. Highway 441 Alachua,

Florida, for the purpose of selling adult products.  (Doc. 38 ¶ 7)  Plaintiff applied for an adult

business license, which was ultimately denied by the City of Alachua (Defendant) because of

city Ordinance 11-06.  (Doc. 38 ¶ 35)  Plaintiff brings a suit against Defendant alleging

Ordinance 11-06 violates Plaintiff's First Amendment right to free speech.

In 1995 Defendant adopted a number of zoning regulations that imposed location and

operation restrictions on adult bookstores and adult entertainment establishments, and

required owners of these establishments to acquire the proper licenses before they could open

for operation.  (Doc. 38 ¶ 9)  In July of 2003, this ordinance was challenged on First

Amendment grounds and Defendant amended its land development regulations.  (Doc. 38 ¶¶

10-11)  To properly amend its regulations Defendant held public hearings, gathered and

studied data on adverse secondary impacts related to adult businesses, and hired the expert

report group Duncan & Associates.  (Doc. 38 ¶ 11)  On November 17, 2003, Defendant

adopted the new regulations under Ordinance Number 0-04-01 for the purpose of "regulating

the secondary effects of sexually oriented businesses."  (Doc. 38 ¶ 12)  This ordinance

allowed sexually oriented businesses to locate "within the same land use and zoning districts

as their non-sexually oriented counterparts" so long as the location was the required

minimum distance from schools, parks, playgrounds, day care centers, religious institutions,

and residential districts.  (Doc. 38 ¶ 15, 18)

　　　In October 2010, Plaintiff leased a vacant building within an appropriate commercial

zone near the intersection of Interstate 75 and U.S. Highway 441.  (Doc. 38 ¶¶ 19-20)

Plaintiff then submitted a site plan to Defendant so Plaintiff could receive a Certificate of

Land Development Regulations Compliance, and open its business.  (Doc. 38 ¶ 21)

Plaintiff's original plan did not contain a sufficient number of parking requirements for the

size of the store and so Plaintiff's plan was denied.  (Doc. 38 ¶ 23)  After a failed first

attempt to amend the plan Plaintiff submitted a revised plan, which Defendant found

constituted a sufficient reduction in the building's square footage to comply with

Defendant's regulations.  (Doc. 38 ¶¶ 26-27)  However, Defendant notified Plaintiff that this

amended plan constituted "development" under Florida law and therefore the property owner must provide written authorization for the proposed development.  (Doc. 38 ¶ 28) Additionally, Defendant notified Plaintiff that "the City's Comprehensive Plan" to designate a "Gateway Activity Center" included the property Plaintiff was currently leasing and that the plan could change the adult use zoning laws.  (Doc. 38 ¶ 29)

On February 28, 2011, Defendant enacted a four-month moratorium on applications for development within the Gateway Activity Center, where the store Plaintiff leased was located.  (Doc. 38 ¶ 30).  The moratorium provided for an administrative mechanism that allowed landowners to seek an exemption.  However, when the Plaintiff's landlord appealed his request for an exemption was denied.  (Doc. 38 ¶ 31)  Then, on May 23, 2011, Defendant adopted a new ordinance, No. 11-06, which encompassed the property leased by Plaintiff and prohibited sexually oriented businesses from locating within the Gateway Activity Center. (Doc. 38 ¶ 33)  Ordinance 11-06 stated that its purpose was to "establish a Gateway Activity Center at the interchange of US 441 and Interstate 75. The intent of establishing this activity center is to welcome existing and future residents and visitors to the City of Alachua, and to promote Alachua as an attractive, vibrant, and economically prosperous community."  (Doc. 6 exhibit 7)  Additionally, the ordinance stated that its purpose was to maintain property values within the Gateway Activity Center and to protect the public health, safety, and welfare of the City of Alachua.  (Doc. 6 exhibit 7)

To support the Ordinance, Defendant created a report that discussed negative secondary effects of sexually oriented businesses.  (Doc. 6 exhibit 8 part I) This report cited a

number of major studies from research groups, such as the American Planning Association,

as well as summaries from major cities' research regarding secondary effects.  (Doc. 6

exhibit 8 part I)  The conclusions these reports came to were that sexually oriented

businesses are associated with an increase in criminal activity, cause a decrease in property

values for residential and commercial areas, and that the negative impacts of sexually

oriented businesses decrease when these businesses are located at least 1,000 feet from the

other businesses or residential areas.  (Doc. 6 exhibit 8 part I)

On June 14, 2011, Plaintiff's request for a Certificate of Land Development was

denied because Ordinance 11-06 prohibited sexually oriented businesses in the Gateway

Activity Center.  (Doc. 38 ¶ 35)  Plaintiff claims this Ordinance was adopted as a

content-based restriction on adult expression and therefore is unconstitutional under the First

and Fourteenth Amendments.  (Doc. 38 ¶ 39) Defendant claims this Ordinance was adopted

to combat the negative secondary effects associated with sexually oriented businesses, as

well as other types of businesses whose secondary effects may negatively impact the

Gateway Activity Center.  Plaintiff requests that  this Court grant a preliminary injunction

preventing Defendant from enforcing the prohibitions of Ordinance 11-06 until a trial on the

merits is held.  (Doc. 38 ¶ 45)

**B. STANDARD OF REVIEW**

Preliminary injunctive relief is only proper when the moving party establishes: "(1) it

has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered

unless the injunction issues; (3) the threatened injury to the movant outweighs whatever

damage the proposed injunction may cause the opposing party; and (4) if issued, the

injunction would not be adverse to the public interest." Siegel v. LePore, 234 F.3d 1163,

1176 (11th Cir. 2000).   A preliminary injunction is an "extraordinary and drastic remedy"

and will not be granted unless the movant establishes "the 'burden of persuasion' as to each

of the four prerequisites." Id.  citing McDonalds Corp. v. Robertson, 147 F.3d 1301, 1306

(11th Cir. 1998).  "Failure to show any of the four factors is fatal, and the most common

failure is not showing a substantial likelihood of success on the merits. " Am. Civil Liberties

Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd., 557 F.3d 1177, 1198 (11th Cir. 2009). If

Plaintiff is unable to prove a "substantial likelihood of success on the merits, we need not

consider the other requirements." Bloedorn v. Grube, 631 F.3d 1218, 1229 (11th Cir. 2011).

However, "[a] loss of First Amendment freedoms, even for minimal periods of time,

unquestionably constitutes irreparable injury" and therefore if Plaintiff can show a

substantial likelihood of success on the merits this Court will grant Plaintiff's request for a

preliminary injunction. Elrod v. Burns, 427 U.S. 347, 373 (1976).

## C. DISCUSSION

In general "[r]easonable regulations of the time, place, and manner of protected

speech, where those regulations are necessary to further significant governmental interests,

are permitted by the First Amendment." Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 63,

n.18 (1976).  An ordinance that does not entirely ban sexually oriented businesses but instead

limits where such businesses may be located should be "analyzed as a form of time, place,

and manner regulation." See City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46

(1986).   Time, place, and manner regulations are evaluated under a three-part test

established by the Supreme Court in <u>City of Renton</u>.  <u>Daytona Grand, Inc. v. City of Daytona</u>

<u>Beach, Fla.</u>, 490 F.3d 860, 870 (11th Cir. 2007).  The Eleventh Circuit has summarized the

test this way:

> [F]irst, the court must determine whether the ordinance constitutes an
> invalid total ban or merely a time, place, and manner regulation; second, if
> the ordinance is determined to be a time, place, and manner regulation, the
> court must decide whether the ordinance should be subject to strict or
> intermediate scrutiny; and third, if the ordinance is held to be subject to
> intermediate scrutiny, the court must determine whether it is designed to
> serve a substantial government interest and allows for reasonable
> alternative channels of communication.

<u>Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., Fla.</u>, 337 F.3d 1251, 1264 (11th

Cir. 2003).  In the present case, Ordinance 11-06 does not constitute a total ban on sexually

oriented business but rather is a time, place or manner regulation. Therefore, since the first

prong of the test is satisfied this Court must determine whether Ordinance 11-06 should be

subject to strict or intermediate scrutiny, and if the ordinance is subject to intermediate

scrutiny, whether it serves a substantial government interest and provides for alternative

channels of communication.

## I. LEVEL OF SCRUTINY

   Regulations enacted with the purpose of restraining speech are reviewed under strict

scrutiny and "presumptively violate the First Amendment."  <u>City of Renton</u>, 475 U.S. at 47.

Regulations that are "'content neutral' time, place, and manner regulations are acceptable so

long as they are designed to serve a substantial governmental interest . . . ."  <u>Id.</u>  The question

is whether Defendant's "predominate concern" in passing the ordinance was to prevent the secondary effects of sexually oriented businesses, or to restrict the adult content of the businesses.  Id.  The Court may look to objective materials, such as the text of the law, the preamble, legislative history, legislative findings, and studies and information relied upon, to determine the legislative concern.  Zibtluda, LLC v. Gwinnett County, Ga., 411 F.3d 1278, 1288 (11th Cir. 2008).  The subjective motivations of the legislators are not material to the inquiry since courts should not strike down "the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted."  United States v. O'Brien, 391 U.S. 367, 383 (1968).

In City of Renton the defendant city passed an ordinance "designed to prevent crime, protect the city's retail trade, maintain property values, and generally 'protect[t] and preserv[e] the quality of [the city's] neighborhoods, commercial districts, and quality of urban life,' not to suppress the expression of unpopular views."  Id. at 48.  The Court observed that this was not a content based regulation because "if [the city] had been concerned with restricting the message purveyed by adult theaters, it would have tried to close them or restrict their number rather than circumscribe their choice as to location."  Id. quoting Am. Mini Theatres Inc., 427 U.S. at 82, n.4.  The Court found that "zoning ordinances designed to combat the undesirable secondary effect of [adult] businesses are to be reviewed under the standards applicable to 'content neutral' time, place, and manner regulations."  Id. Therefore, when an ordinance is adopted to prevent harmful secondary effects of adult businesses and not to "suppress the expression of unpopular views"

intermediate scrutiny should apply.  Id. at 48.

In the present case Ordinance 11-06 was passed, in part, to maintain and enhance the property values of the area and to protect the public health, safety, and welfare of the city. (Doc. 6 exhibit 8)  The report made in support of the ordinance mainly focused on the negative secondary effects of sexually oriented businesses and referenced numerous studies to show the effect these businesses had on the surrounding areas.  (Doc. 6 exhibit 9)  The report concluded that sexually oriented businesses can have a negative impact on the value of surrounding property and can increase crime rates within the area.  (Doc. 6 exhibit 9)  The purpose of Ordinance 11-06 was to prevent these secondary effects, to protect the surrounding area, and to present the city as an "economically prosperous community." Since the "predominate concern" of Defendant was to prevent the harmful secondary effects of an adult business and not to restrict the content of these businesses, this Court will subject Ordinance 11-06 to intermediate scrutiny.

## II. SUBSTANTIAL GOVERNMENTAL INTEREST

A city may rely on "any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest." City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 438 (2002).  Once that evidence is introduced, if the plaintiff does not cast doubt on the city's evidence then the city has met its burden to show a substantial governmental interest.  Id.  However, if the plaintiff does cast doubt on the evidence used to justify the ordinance then the burden shifts back to the city to provide evidence that supports its rationale for the ordinance.  Id.  To support its

Case No. 1:11-CV-00187-SPM-GRJ

rationale for an ordinance, a city must be given "a reasonable opportunity to experiment with solutions" to address the negative secondary effects it believes will come from the protected speech.  Young, 427 U.S. at 71.  It only needs to appeal to "common sense" to show the ordinance will successfully deal with the stated secondary effects and the city does not need to provide empirical data to show the ordinance will be effective. City of Los Angeles, 535 U.S. at 439.  The Supreme Court in City of Los Angeles specifically stated that it "refused to set . . . a high bar for municipalities that want to address merely the secondary effects of protected speech." Id.

In the present case Defendant has met its burden to establish a substantial governmental interest.  Defendant's report in support of the amendment cited to numerous studies done by different cities and organizations that pointed to the negative secondary effects of sexually oriented businesses. Plaintiff challenges the studies Defendant relied upon as not supporting the rationale for prohibiting adult businesses in the Gateway Activity Center. However, all that is required of Defendant is to show it relied upon evidence that is "reasonably believed to be relevant to the secondary effects that [Defendant] seek[s] to address." Id. at 442.  The reports relied upon by Defendant show increased crime rates, and depreciation of property values in the areas surrounding sexually oriented businesses.

Plaintiff's memorandum in favor of a preliminary injunction states that Plaintiff will attempt to undermine the reports relied upon by Defendant, but Plaintiff does not disclose what this evidence is. The burden is upon Plaintiff to show that there is a genuine issue of material fact to justify an evidentiary hearing on this issue. McDonalds Corp. v. Robertson,

Case No. 1:11-CV-00187-SPM-GRJ

147 F.3d 1301, 1311-13 (11th Cir. 1998) (evidentiary hearing for preliminary injunction not needed where material facts are not in dispute). Plaintiff has not met this burden. Plaintiff has not demonstrated that it has any evidence that the Court could rely upon to find these reports are not reasonably relevant to the secondary effects Defendant is addressing. Defendant has met its burden to show a substantial governmental interest exists.  Plaintiff has failed to demonstrate what evidence it has to cast doubt about this matter so as to require an evidentiary hearing at this time.[1]

## III. ALTERNATIVE AVENUES

"A new zoning regime must leave adult businesses with a 'reasonable opportunity to relocate,' and 'the number of sites available for adult businesses under the new zoning regime must be greater than or equal to the number of adult businesses in existence at the time the new zoning regime takes effect."  Daytona Grand, Inc., 490 F.3d at 870.

In the present case, Ordinance 11-06 does not ban sexually oriented businesses from the City of Alachua but instead prohibits them from locating in the Gateway Activity Center. Defendant lists at least 25 locations that are vacant and permissible under local zoning laws for sexually oriented businesses to locate.  (Doc. 17 exhibit 3)  These alternative locations do not have to be "ideal" and "simply because adult businesses 'must fend for themselves in the real estate market'" does not mean a violation of the First Amendment has occurred.  Id. All

---

[1]  The Court is willing to reconsider this matter prior to trial if Plaintiff makes a specific showing of its evidence and arguments.  Of course, Plaintiff may choose to wait and make its case for injunctive relief at the trial on the merits.

that is required are locations that do not cause significant impediments to adult businesses

attempting to relocate.  Id.  In the present case, unless Plaintiff can show these alternative

locations are improper, there appears to be a constitutionally sufficient number of alternative

sites and therefore Defendant has met its burden to provide reasonable alternative channels

of communication.

## D. CONCLUSION

Plaintiff has failed to show a likelihood of success on the merits.  Accordingly, it is

ORDERED and ADJUDGED:

1.      Plaintiff's motion for a preliminary injunction (doc. 5) is DENIED.

2.      Plaintiff's motion for oral argument and evidentiary hearing (doc. 7) is

DENIED.

DONE and ORDERED this 17th  day of April, 2012.

*s/ Stephan P. Mickle*

Stephan P. Mickle
Senior United States District Judge